**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRONTLINE FABRICS, INC.,<br>Plaintiff,<br>v.<br>GULIPEK KUMAS VE IPLIK VE, et al.,<br>Defendants. | Civil Action No.2:25-cv-07342-KSM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT <u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

**BROWN & CONNERY**

Susan M. Leming, Esq.
360 North Haddon Avenue
Westmont, NJ 08108
Phone: (856) 854-8900
Facsimile: (856) 858-4967
sleming@brownconnery.com

*Counsel for Defendant, TD Bank, N.A.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..... 2

LEGAL ARGUMENTS ..... 4

I. Motion to Dismiss Standard ..... 4

II. Plaintiff Fails to State a Claim for Negligence Against TD Bank. ..... 4

A. Banks Owe No Duty to Noncustomers ..... 5

B. Imposition of a Duty is Unwarranted. ..... 8

(1) The Relationship Between the Parties. ..... 8

(2) Social Utility of TD Bank's Conduct ..... 9

(3) Nature of the Risk and Foreseeability of Harm. ..... 9

(4) Consequences of Imposing a Duty. ..... 10

(5) Overall Public Interest. ..... 12

III. Plaintiff Fails to State a Plausible Declaratory Judgment Cause of Action. ..... 13

A. Plaintiff Does Not Properly Anchor Its Declaratory Judgment Claim. ..... 13

B. Plaintiff Does Not Establish Any UCC Article 4A Violation Against TD Bank. ..... 14

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

Cases

*Adkins v. Sogliuzzo*,
625 F. App'x 565 (3d Cir. 2015) .... 5, 6

*Allen v. DeBello*,
861 F.3d 433 (3d Cir. 2017).... 14

*Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) .... 1, 8, 9, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).... 4

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) .... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).... 4

*Berrier v. Simplicity Mfg., Inc.*,
563 F.3d 38 (3d Cir. 2009).... 9

*Campbell v. Pa. Sch. Bds. Ass'n*,
336 F. Supp. 3d 482 (E.D. Pa. 2018) .... 14

*Chemalloy Co., LLC v. Citibank, N.A.*,
609 F. Supp. 3d 370 (E.D. Pa. 2022) .... 5, 6, 7, 9, 12, 15

*Citizens Bank of Pa. v. Reimbursement Techs.*,
609 F. App'x 88 (3d Cir. 2015) .... 8, 11

*City Check Cashing v. Mfrs. Hanover Tr. Co.*,
166 N.J. 49, 60 (2001) .... 5

*Commerce Bank v. First Union Nat'l Bank*,
911 A.2d 133 (Pa. Super. Ct. 2006).... 9, 10, 11, 12

*DeFazio v. Wells Fargo Bank Nat'l Ass'n*,
No. 20-375, 2020 U.S. Dist. LEXIS 66848, at *14 (D.N.J. Apr. 16, 2020) .... 12

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) .... 6

*Elkin Valley Baptist Church v. PNC Bank, N.A.*,
748 F. Supp. 3d 293 (W.D. Pa. 2024).... 7

*Feleccia v. Lackawanna Coll.*,
215 A.3d 3, 13 (Pa. 2019).... 8

*Fragale v. Wells Fargo Bank, N.A.*,
480 F. Supp. 3d 653 (E.D. Pa. 2020) .... 6, 7, 8, 9, 10, 11, 12, 13, 15

*Graber v. Westfield Ins. Co.*,
No. 21-3313, 2024 U.S. Dist. LEXIS 151285, at *16 (E.D. Pa. Aug. 23, 2024) .................... 14

*Hamburg v. Santander Bank, N.A.*,
No. 16-5142, 2016 U.S. Dist. LEXIS 177186, at *4 n.2 (E.D. Pa. Dec. 21, 2016).................... 6

*In re Azek Bldg. Prods. Mktg. & Sales Practices Litig.*,
82 F. Supp. 3d 608 (D.N.J. 2015) ........................................................................................ 14

*Medwell, LLC v. Cigna Corp.*,
No. 20-10627, 2021 U.S. Dist. LEXIS 96292, at *6 (D.N.J. May 19, 2021) .......................... 14

*Menkes v. 3M Co.*,
No. 17-0573, 2018 U.S. Dist. LEXIS 84574, at *11 (E.D. Pa. May 21, 2018) .......................... 9

*Morrow v. Balaski*,
719 F.3d 160 (3d Cir. 2013)........................................................................................................ 4

*Organic Leasing, LLC v. Branch Banking & Tr.*,
No. 18-1421, 2018 U.S. Dist. LEXIS 164229, at *5 (E.D. Pa. Sep. 24, 2018) ........................ 15

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)........................................................................................................ 4

*R.W. v. Manzek*,
888 A.2d 740 (Pa. 2005) ............................................................................................................ 9

*Seebold v. Prison Health Servs.*,
57 A.3d 1232 (Pa. 2012) ...................................................................................................... 8, 10

*Sharpe v. St. Luke's Hosp.*,
821 A.2d 1215 (Pa. 2003) ........................................................................................................ 11

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010)........................................................................................................ 4

*Shooter Pops LLC v. Wells Fargo Bank, N.A.*,
649 F. Supp. 3d 62 (E.D. Pa. 2023) ................................................................................ 6, 10, 11

*Twombly*,
550 U.S. at 555.......................................................................................................................... 4

*Walters v. UPMC Presbyterian Shadyside*,
187 A.3d 214 (Pa. 2018) ...................................................................................................... 8, 10

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ............................................................................................... 13

*Wisniski v. Brown & Brown Ins. Co.*,
906 A.2d 571 (Pa. Super. Ct. 2006)............................................................................................ 5

*Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*,
No. 23-0979, 2024 U.S. Dist. LEXIS 44671, at *11 (E.D. Pa. Mar. 13, 2024)....................... 12

***Statutes***

13 Pa. Cons. Stat. § 4A503(3) .......... 16

***Rules***

Fed. R. Civ. P. 8(a)(2) .......... 4
Fed. R. Civ. P. 12(b)(6) .......... 4

## INTRODUCTION

Plaintiff, Frontline Fabrics, Inc. ("Plaintiff") seeks to hold Defendant, TD Bank, N.A. ("TD Bank") liable for losses totaling $1,426,476.86 that Plaintiff allegedly suffered when third-party hackers accessed an employee email account of Plaintiff's foreign vendor, Defendant, Gulipek Kumas Ve Iplik Ve ("Gulipek Tech"), and then facilitated the sending of funds, which Plaintiff authorized, to an allegedly fraudulent bank account instead of one allegedly controlled by Gulipek Tech. Plaintiff brings two claims against TD Bank: a common law negligence claim and a nebulous claim seeking declaratory judgment for a general violation of Article 4A under the Uniform Commercial Code ("UCC").

Plaintiff's claims as to TD Bank fail as a matter of law. First, Plaintiff's negligence claim is contingent upon the existence of a duty owed by TD Bank to Plaintiff. However, there is no relationship between Plaintiff and TD Bank. Plaintiff was not a TD Bank customer. Under Third Circuit law, banks owe no duty of care to a noncustomer. Courts in this very District have so held, as have other courts throughout the country. Moreover, an examination of the five factors set forth in *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000), weigh against finding a duty of care owed by a beneficiary bank, as the term is used in the UCC, to a noncustomer. Second, Plaintiff's declaratory judgment count lacks a legally cognizable basis. Plaintiff does not identify any UCC provision that TD Bank violated because none exists. TD Bank should not have to guess at Plaintiff's cause of action. Additionally, the Federal Declaratory Judgment Act requires that Plaintiff pled a viable underlying claim. Third Circuit case law is clear that Plaintiff, as a noncustomer, has no cause of action against TD Bank, the beneficiary bank under the facts as alleged.

Accordingly, TD Bank respectfully requests that the Court grant its motion to dismiss, with prejudice, as to all claims pled against TD Bank.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As alleged, in February 2025, Gulipek Tech contacted Plaintiff claiming that Plaintiff failed to pay nearly $300,000 in invoices. *See* Complaint, ECF No. 1, at ¶ 14. Plaintiff's controller, Tiffany Lawler, had recently resigned. Given that Plaintiff had access to her emails and accounting records, Plaintiff began to investigate Gulipek Tech's claim. *Id.* at ¶15. Plaintiff allegedly concluded that Lawler issued multiple payments in Gulipek Tech's name, but routed those payments to a different bank account—an allegedly recently opened TD Bank account—than Gulipek Tech had used previously. *Id.* at ¶ 16. Plaintiff is a noncustomer of TD Bank. *Id.* at ¶ 36 (noting that Plaintiff's bank is Co-Defendant, Truist Bank). As alleged, the above-referenced payments were prompted by emails between Lawler and Plaintiff's local contact at Gulipek Tech, Lonnie Braxton, using Braxton's Gulipek Tech email address. *Id.* at ¶ 17.

Plaintiff alleges that prior to the payments being made, Braxton had allegedly instructed Lawler to update Gulipek Tech's bank account information—from a Turkish bank account to the TD Bank account. *Id.* at ¶ 18. Plaintiff further alleges to have contacted Gulipek Tech, who confirmed that it had planned to open a United States bank account, and that it had not received any of the payments Plaintiff initiated. *Id.* at ¶ 19. Gulipek Tech further allegedly advised Plaintiff it had not learned of any email or computer system compromises. *Id.* at ¶ 20.

Further, Plaintiff alleges to have learned that Braxton's email address had been accessed by a third party, that the emails sent to Lawler were sent from Braxton's official Gulipek Tech email account, and that Braxton hadn't received any of Lawler's responses asking questions about invoices or payment confirmations. *Id.* at ¶ 21. Allegedly, the same morning that Plaintiff spoke

to Braxton, Gulipek Tech informed him that he needed to update all of his passwords and that he was required to enable multi-factor authentication. *Id.* at ¶ 22.

Plaintiff allegedly concluded that Gulipek Tech's computer systems were infiltrated by third-party hackers who posed as Braxton and facilitated the sending of the funds to a fraudulent bank account rather than an allegedly legitimate account that Gulipek Tech was planning to open. *Id.* at ¶¶ 23-24. Plaintiff alleges that between January 13, 2025 and February 12, 2025, six Automated Clearing House ("ACH") transactions were sent to the TD Bank account to and for the benefit of "Gulipek Kumas Ve Iplik" totaling $1,426,476.86. *Id.* at ¶¶ 25-26.

Plaintiff eventually reported the alleged theft of its funds to local law enforcement and the Federal Bureau of Investigation ("FBI") in late February 2025. *Id.* at ¶ 31. Plaintiff's outside counsel contacted TD Bank in late-March 2025 seeking TD Bank's assistance in "clawing back" the funds, but the funds were allegedly unavailable. *Id.* at ¶¶ 32-37.

Based upon the allegations in the Complaint, the third-party hackers allegedly transferred the funds out of the TD Bank account using Zelle, who allegedly "flagged" the transfers as suspicious. *Id.* at ¶ 39. The third-party hackers thereafter allegedly converted the funds into cryptocurrency. *Id.* To date, other than $100,000 which has allegedly been located but not yet recovered by the FBI, Plaintiff has not recovered its transferred funds. *Id.* at ¶¶ 41-42.

Plaintiff submitted a claim to its insurance company, Defendant, Federal Insurance Company ("Federal"), but Federal denied all claims on November 19, 2025. *Id.* at ¶¶ 43-44.

# LEGAL ARGUMENTS

## I. Motion to Dismiss Standard

In accordance with Federal Rule of Civil Procedure 8, pleadings in federal courts must contain, among others, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss made pursuant to Rule 12(b)(6) allows the Court to dispose of a claim for relief, before the parties are required to devote time and resources to it, where it is clear on the face of the pleading that the plaintiff's asserted claims cannot succeed.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted)). In deciding a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Although factual allegations should be accepted as true, the court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). However, the pleading must allege more than "labels and conclusions," "threadbare recitals," or "naked assertion[s] devoid of further factual enhancement." *See Twombly*, 550 U.S. at 555.

## II. Plaintiff Fails to State a Claim for Negligence Against TD Bank.

The absence of a duty TD Bank owed to Plaintiff, and the failure to plead concrete facts to state a plausible negligence claim, make this claim ripe for dismissal. Plaintiff alleges TD Bank

owed Plaintiff a duty "of reasonable care in opening, verifying, and maintaining deposit accounts so as to not facilitate obvious fraud, including implementing reasonable procedures to detect identity misrepresentation and suspicious account activity." *See* Complaint, ECF No. 1, at ¶ 46. Plaintiff further alleges that TD Bank had a duty to "follow state and federal laws and regulations applicable to account opening, identity verification, and monitoring for suspicious activity." *Id.* at ¶ 47. Plaintiff also alleges TD Bank breached its duty by allowing third-party hackers to withdraw large amounts of funds from the TD Bank account. *Id.* at ¶ 50. However, Plaintiff's negligence claim fails because the Complaint does not plausibly allege sufficient facts establishing that TD Bank owed Plaintiff any duty of care. And, since Plaintiff was not a TD Bank customer, no duty of care is owed as a matter of law.

**A. Banks Owe No Duty to Noncustomers.**

Pursuant to Pennsylvania common law, "[i]t is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Chemalloy Co., LLC v. Citibank, N.A.*, 609 F. Supp. 3d 370, 376 (E.D. Pa. 2022) (alteration in original) (quoting *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575 (Pa. Super. Ct. 2006)). "There is a substantial lack of precedent acknowledging a bank's obligation or duty to noncustomers. Quite the opposite, precedent supports the principle that banks do not owe any duty of care to noncustomers and/or third parties." *Id.* at 377; *see also Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) (quoting *City Check Cashing v. Mfrs. Hanover Tr. Co.*, 166 N.J. 49, 60 (2001) ("Absent a special relationship, courts will typically bar claims of non-customers against banks."); *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d

653, 661 (E.D. Pa. 2020) ("[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties.").

Here, it is undisputed, based upon the allegations in the Complaint, that Plaintiff was not a customer of TD Bank. *See* Complaint, ECF No. 1, at ¶ 36 (alleging Plaintiff's bank was Co-Defendant, Truist). Plaintiff cannot, therefore, state a claim for common law negligence because TD Bank owes no duty to Plaintiff, a noncustomer—the weight of countless decisions, including those within the Third Circuit and this District, supports dismissal of this claim. *See e.g.*, *Chemalloy Co., LLC*, 609 F. Supp. 3d at 376; *Adkins v. Sogliuzzo*, 625 F. App'x at 569; *Fragale*, 480 F. Supp. 3d at 661; *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 68 (E.D. Pa. 2023) ("Plaintiff fails to plead that a bank owes any common law duties to noncustomers under the Restatement of Torts"); *Hamburg v. Santander Bank, N.A.*, No. 16-5142, 2016 U.S. Dist. LEXIS 177186, at *4 n.2 (E.D. Pa. Dec. 21, 2016) ("Courts in numerous jurisdictions have held that 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" (quoting *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002))).

Further, Plaintiff's conclusory allegations that TD Bank owed it a duty of care in "opening, verifying, and maintaining deposit accounts so as not to facilitate obvious fraud, including implementing reasonable procedures to detect identity misrepresentation and suspicious account activity," fail to salvage its negligence claim. *See* Complaint, ECF No. 1, at ¶ 46. Courts in the Third Circuit have consistently dismissed common law negligence claims containing similar allegations to the instant matter. *See Shooter Pops LLC*, 649 F. Supp. 3d at 65 (noncustomer's negligence claim to recover "funds obtained fraudulently by a Wells Fargo customer and subsequently withdrawn from a Wells Fargo customer account" dismissed for lack of duty); *see also Chemalloy Co., LLC*, 609 F. Supp. 3d at 376-77 (dismissing noncustomer's negligence claim

based on bank's "affirmatively created duty of care by allegedly agreeing to freeze the funds pending a fraud investigation" given no duty of care); *Fragale*, 480 F. Supp. 3d at 664 (noncustomer's negligence claim grounded on bank's alleged failure to verify identity of individual opening account and alleged failure to take measures to prevent withdrawal of funds from recently opened account dismissed for lack of duty given plaintiff "failed to allege any facts to suggest that when Wells Fargo actually opened the Account, it should have been on notice that this particular account was being opened for criminal or fraudulent purposes"); *but cf.*, *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293 (W.D. Pa. 2024) (non-binding decision holding plaintiff plausibly alleged beneficiary bank dispensed with safeguards required by its own procedures thereby engaging in affirmative conduct that foreseeably increased the risk of fraud and owed a duty of care to plaintiff).

Plaintiff also alleges that TD Bank "knew or should have known" that the persons opening the TD Bank account were not in fact bona fide representatives of Gulipek Tech, and that TD Bank either failed to require identifying information or failed to authenticate same. *See* Complaint, ECF No. 1 at ¶ 27. However, Plaintiff has not articulated any good faith basis for so alleging, especially considering Plaintiff's allegations rely "[o]n information and belief." *Id.* These allegations regarding purported duties allegedly owed by TD Bank are merely conclusory and amount to legal conclusions rather than factual allegations establishing that TD Bank owed Plaintiff a cognizable duty under applicable law.

TD Bank respectfully submits that, as a beneficiary bank, in accordance with national case law developed over decades, it owes no duty of care to Plaintiff, a noncustomer, who was the victim of a third-party fraud scheme.

### B. Imposition of a Duty is Unwarranted.

In *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000), the Pennsylvania Supreme Court established a five-factor test courts use in considering whether a given set of facts warrants imposing a duty of care notwithstanding its previous absence. The factors include: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Id.* "[T]he Court assigns appropriate weight to each salient policy factor, depending on the particularized nature of the asserted duty at hand and context." *Seebold v. Prison Health Servs.*, 57 A.3d 1232, 1249 (Pa. 2012).

"Courts should not enter into the creation of new common law duties lightly…." *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 13 (Pa. 2019). As argued below, the *Althaus* factors, when considered in their totality, weigh against the creation of a duty owed by banks to noncustomers, as countless courts have found previously.

#### (1) The Relationship Between the Parties.

"Typically, whether the defendant owes a duty to the plaintiff arises from the relationship between those parties …." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 232 (Pa. 2018). As the Third Circuit has recognized, the lack of any relationship between the parties "is a significant factor that weighs against the existence of a duty." *Citizens Bank of Pa. v. Reimbursement Techs.*, 609 F. App'x 88, 92 (3d Cir. 2015). Moreover, "mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Fragale*, 480 F. Supp. 3d at 665 (quoting *Walters*, 187 A.3d at 232).

Here, no relationship exists between Plaintiff and TD Bank. Nor does Plaintiff allege any kind of "special relationship" with TD Bank sufficient to create a duty of care. *See Chemalloy Co., LLC*, 609 F. Supp. 3d at 377 ("Chemalloy fails to plead that Citibank otherwise had some special relationship to it that would create a duty."). Plainly, this first *Althaus* factor cuts against finding a duty. *See Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. Ct. 2006) (noting the parties "were essentially strangers to each other at the relevant time, this factor does not support a finding of a duty."); *see also Menkes v. 3M Co.*, No. 17-0573, 2018 U.S. Dist. LEXIS 84574, at *11 (E.D. Pa. May 21, 2018) ("where courts have found no discernable relationship between plaintiff and defendant, this factor weighs against the existence of a duty.") (citing *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 40, 62 (3d Cir. 2009)).

**(2) Social Utility of TD Bank's Conduct.**

Courts have found "obvious social utility in banks taking action to prevent fraudulent banking activity." *Fragale*, 480 F. Supp. 3d at 665. "Such action could discourage [a criminal] from continuing this conduct, and thereby help to protect third parties and minimize losses." *Commerce Bank*, 911 A.2d at 139. Though this factor likely cuts in favor of finding a duty, it is not "particularly significant." *Fragale*, 480 F. Supp. 3d at 665.

**(3) Nature of the Risk and Foreseeability of Harm.**

"Regarding the third factor, duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *R.W. v. Manzek,* 888 A.2d 740, 747 (Pa. 2005). Pennsylvania courts have been generally "reluctant to impose a duty to protect a member of the general public from the harmful acts of third parties, in the absence of special circumstances." *Commerce Bank*, 911 A.2d at 139. "[E]conomic loss 'does not compare to other

non-monetary risks such as loss of human life or physical harm.'" *Shooter Pops LLC*, 649 F. Supp. 3d at 70 (quoting *Fragale*, 480 F. Supp. 3d at 666).

Given the exclusively economic nature of the claims at issue, the nature of the risk necessarily cuts against finding a duty. *See Walters*, 187 A.3d at 236 (finding nature of risk "grave" given that it "would be difficult to overstate the risk to public health that this case presents"); *see also Fragale*, 480 F. Supp. 3d at 666 (Court's assessment of nature of risk "speculative" given absence of information as to bank's processing of non-fraudulent wire transfers).

As to the foreseeability component of the analysis, hindsight is 20/20. *See Commerce Bank*, 911 A.2d at 139 ("While it may be easy in hindsight to trace Appellant's losses back to some act or omission by First Union, this is not the test. The test is whether the harm to Appellant was foreseeable in the first instance."); *see also Fragale*, 480 F. Supp. 3d at 666 ("With the benefit of hindsight, an argument can be made that it was foreseeable that a noncustomer who was deceived into transferring money to an account at Wells Fargo might be the victim of a fraudulent scheme perpetrated by someone who opened the account for fraudulent purposes."). Plaintiff has failed to allege ***any*** facts, beyond those based "on information and belief," to suggest that TD Bank should have or could have foreseen that a third-party noncustomer would be targeted by a criminal and deceived into transferring funds to that criminal. Nor is foreseeability "alone determinative of the duty question." *Seebold*, 57 A.3d at 1249. This factor weighs against finding a duty of care.

**(4) Consequences of Imposing a Duty.**

"When evaluating the consequences of imposing a duty, the fourth factor requires courts to evaluate the 'burden of imposing a duty upon [the defendant].'" *Fragale*, 480 F. Supp. 3d at 667 (quoting *Walters*, 187 A.3d at 239). Courts also consider which party is in the better position

to prevent the alleged harm. *See Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1220 (Pa. 2003) ("As to the consequences of imposing a duty upon the Hospital, that entity is in the best position to ensure the non-negligent collection and handling of the specimen, and thus, it possesses the ability to limit its liability by acting reasonably with respect to employee drug screening."); *see also Citizens Bank of Pa.*, 609 F. App'x at 93 ("[T]he consequences of imposing a duty on RTI would seem to misplace the responsibility on the entity in the worse position of actually preventing the fraudulent conduct."); *Fragale*, 480 F. Supp. 3d at 667 (quoting *Commerce Bank*, 911 A.2d at 139 (finding burden of having bank first pause to consider whether a large withdrawal of recently transferred funds was significant because imposing that duty "would inevitably force banks to . . . restrict the[ir] clients' accounts on the least degree of suspicion, thereby alienating their customers, in order to avoid unspecified liability.")).

Here, imposing upon banks a duty of care to noncustomers would be significant, as it could "impose broad liability on banks to noncustomers and create the perverse incentive for banks to take no action at all." *Shooter Pops LLC*, 649 F. Supp. 3d at 69. As Plaintiff acknowledges, Plaintiff was in the best position to prevent the theft of its funds. *See* Complaint, ECF No. 1, at ¶¶ 15-18. In fact, Plaintiff authorized the transfer of the funds out of its account. Furthermore, seeking to impose a duty upon a bank of a noncustomer would open the proverbial floodgates as previously determined by the Courts in this District. As the Eastern District of Pennsylvania has already recognized, "this Court 'decline[s] to make banks the guarantors of their clients' trustworthiness." *Fragale*, 480 F. Supp. 3d at 667 (alteration in original) (quoting *Commerce Bank*, 911 A.2d at 139); *see also id.* at 668 ("Here, Plaintiff's requested imposition of duties on a bank to noncustomers would subject banks to unlimited liability to an unlimited number of noncustomers."). This fourth factor necessarily cuts against finding a duty.

**(5) Overall Public Interest.**

As this Court has previously noted, "the prevailing general rule that banks do not owe a duty to noncustomers is persuasive and supports the conclusion that there is no public interest in imposing a duty on banks, …, to protect noncustomers from fraudulent schemes." *Fragale,* 480 F. Supp. 3d at 668-69; *see also Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*, No. 23-0979, 2024 U.S. Dist. LEXIS 44671, at *11 (E.D. Pa. Mar. 13, 2024) ("Additionally, courts considering the same basic fact pattern have found that the *Althaus ex rel. Alliums v. Cohen* factors weigh against finding a previously unrecognized duty, as would be the case here."); *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. 20-375, 2020 U.S. Dist. LEXIS 66848, at *14 (D.N.J. Apr. 16, 2020) ("What Plaintiff does not do is cite to any binding legal authority to rebut Wells Fargo's argument, supported by caselaw, that it did not owe Plaintiff a duty of care with regard to the opening of an account for some third party or, for that matter, with regard to its management of the account."). Moreover, "the omission of a private right of action under state or federal banking laws and/or regulations is instructive in determining where the public interest lies." *Fragale, 480* F. Supp. 3d at 669.

Here, as other Pennsylvania decisions have concluded, there is limited, if any, public interest in imposing a duty of care on banks to protect noncustomers from fraudulent schemes such as the one alleged here. *See Fragale*, 480 F. Supp. 3d 653, 668-69; *see also Commerce Bank*, 911 A.2d at 140; *Chemalloy Co., LLC*, 609 F. Supp. 3d at 379. Although "the public has an interest in preventing fraudulently obtained funds from being withdrawn once suspicious behavior has been identified," *Chemalloy Co., LLC,* 609 F. Supp. 3d at 379, this Court has found "the consistent, prevailing, nationwide caselaw persuasive as indicating that there is minimal public interest in

imposing the requested duties on banks … under these circumstances." *Fragale*, 480 F. Supp. 3d at 668. Accordingly, this factor should cut against finding a duty of care in this case.

## III. Plaintiff Fails to State a Plausible Declaratory Judgment Cause of Action.

Plaintiff cannot maintain a viable declaratory judgment claim for three reasons. Initially, this claim should be dismissed as a shotgun pleading. Shotgun pleadings are complaints that: (1) contain "multiple counts where each count adopts the allegations of all preceding counts," (2) are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) do "not separat[e] into a different count each cause of action or claim for relief" or (4) "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Plaintiff's Complaint, and specifically its declaratory judgment claim, leaves TD Bank to guess the exact parameters of the claim, especially since the declaratory judgment claim is pled against three separate defendants yet is merely three paragraphs long. That deficiency notwithstanding, Plaintiff's declaratory judgment claim still fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Plaintiff Does Not Properly Anchor Its Declaratory Judgment Claim.

Second, Plaintiff fails to anchor its declaratory judgment claim to any other viable cause of action. As set forth at length above, Plaintiff has no negligence claim and, as set forth more fully below, Plaintiff has no claim for any alleged violation of UCC Article 4A. Without such a plausible "anchor" claim, Plaintiff's declaratory judgment claim should fail as a matter of law.

Declaratory judgment is a remedy, not a cause of action. *See Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017) ("The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy."); *see also Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 504 (E.D. Pa. 2018) (noting that plaintiffs could not amend their complaint to add a declaratory judgment count because plaintiffs had failed to prevail on the merits and "[d]eclaratory judgment is a remedy and not a cause of action."); *Medwell, LLC v. Cigna Corp.*, No. 20-10627, 2021 U.S. Dist. LEXIS 96292, at *6 (D.N.J. May 19, 2021) (stating the Declaratory Judgment Act "is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law.").

Here, Plaintiff has no viable cause of action upon which it can anchor its declaratory judgment claim. As argued above, Plaintiff's negligence claim fails because a bank owes no duty to a noncustomer. As for the UCC, Plaintiff alleges merely that TD Bank "violated Article 4A of the Uniform Commercial Code" without ever citing any particular section that TD Bank allegedly violated. Without a viable substantive cause of action, Plaintiff's declaratory judgment claim must fail. *See Graber v. Westfield Ins. Co.*, No. 21-3313, 2024 U.S. Dist. LEXIS 151285, at *16 (E.D. Pa. Aug. 23, 2024) (dismissing declaratory judgment claim given dismissal of underlying substantive claims); *see also In re Azek Bldg. Prods. Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015) ("[T]he declaratory judgment cause of action alleged by Plaintiffs does not provide a substantive basis for relief."). Plaintiff's declaratory judgment claim cannot stand on its own.

**B. Plaintiff Does Not Establish Any UCC Article 4A Violation Against TD Bank.**

Lastly, the Complaint does not allege facts showing that Article 4A applies to the alleged transactions at issue. Article 4A governs funds transfers, but the Complaint does not allege that

TD Bank was involved in transmitting or receiving funds transfers on Plaintiff's behalf. Rather, the Complaint alleges that Plaintiff sent payments through its own bank, Truist. "Article 4A of the UCC applies to claims arising out of wire transfers." *Chemalloy Co., LLC*, 609 F. Supp. 3d at 374; *see also Organic Leasing, LLC v. Branch Banking & Tr.*, No. 18-1421, 2018 U.S. Dist. LEXIS 164229, at *5 (E.D. Pa. Sep. 24, 2018) ("Article 4A governs funds transfers."). As this Court has recognized, Article 4A governs specific conduct during a specific window of time as it relates to wire transfers. *See Fragale*, 480 F. Supp. 3d at 659 ("By definition, Article 4A governs only those actions occurring between the originator's wire fund instruction ('beginning with the originator's payment order') and the beneficiary bank's acceptance of the wire transferred funds ('completed by acceptance by the beneficiary's bank of a payment order')." Claims premised on pre-transfer conduct fall outside the scope of Article 4A, as do claims premised on post-transfer conduct. *Id.* at 660 ("From a chronological factual perspective, it is apparent that the opening of the Account occurred at a point in time prior to Plaintiff's wire fund transfer instruction (the payment order). Thus, any claim premised on the opening of the Account falls outside the scope of Article 4A."); *see also id.* ("It is equally apparent that the challenged withdrawal of the funds occurred at a point in time after the beneficiary bank (Wells Fargo) 'accepted' the wire transferred funds. As such, any claim premised on the withdrawal of funds from the Account also falls outside of the scope of Article 4A.").

Here, Plaintiff's Complaint alleges TD Bank is liable for conduct falling outside the scope of Article 4A and therefore Plaintiff cannot maintain an Article 4A claim. *See* Complaint, ECF No. 1, at ¶ 27 ("TD Bank either failed to require submission of personal identity or corporate authority documentation or failed to properly authenticate such documents"); *see also id.* at ¶ 29 ("TD Bank knew or should have known that the recipient and beneficiary of Frontline's ACH

payments were not Gulipek Tech and did not represent Gulipek Tech."); *id.* at ¶ 35 ("On information and belief, TD Bank failed to implement reasonable measures to detect and/or prevent the fraudulent opening and misuse of the bank account opened in Gulipek Tech's name."); *id.* at ¶ 51 ("[I]t was unreasonable to allow 'Gulipek Kumas Ve Iplik Ve,' a Middle Eastern vendor with a newly opened or newly used bank account, to receive unusually large sums of money from a single source over a short period of time, then rapidly withdraw those unusually large sums of money and immediately convert such funds into cryptocurrency."). Furthermore, as Plaintiff acknowledged in its Complaint, Article 4A applies to a bank's customers, not noncustomers. *See id.* at ¶ 64 ("TD Bank, Truist, and EWS are governed in part by Article 4a of the Uniform Commercial Code, which defines the rights and duties of banks and their customers and establishes liability for errors or fraud."). Simply, Plaintiff cannot maintain a cause of action related to an alleged Article 4A claim against TD Bank. TD Bank respectfully submits that Plaintiff's Count III, requesting a declaratory judgment claim based upon violation of Article 4A of the UCC should be dismissed as a matter of law.

Further, the Complaint does not identify which specific provision(s) of Article 4A TD Bank allegedly violated. The Complaint only contains a conclusory allegation that TD Bank violated Article 4A without specifying what duties Article 4A imposed on TD Bank in this context or how TD Bank allegedly breached those duties. *See* Complaint, ECF No. 1, at ¶ 65 ("[i]n handling Frontline's funds and transmitting them to Hackers, TD Bank, Truist, and EWS violated Article 4A of the Uniform Commercial Code."). Despite the fact that Plaintiff never identifies any particular UCC section that TD Bank allegedly violated, any claim to enjoin TD Bank from releasing any of the transferred funds pursuant to 13 Pa. Cons. Stat. § 4A503 fails as a matter of law because Plaintiff does not allege that TD Bank is holding any funds. *See* 13 Pa. Cons. Stat. §

4A503(3) ("For proper cause and in compliance with applicable law, a court may restrain … (3) the beneficiary's bank from releasing funds to the beneficiary or the beneficiary from withdrawing the funds.").

TD Bank thus respectfully submits that Plaintiff has failed to state a claim upon which relief can be granted for declaratory judgment warranting dismissal.

## CONCLUSION

For all the foregoing reasons, TD Bank respectfully submits that Plaintiff's Complaint should be dismissed in its entirety as a matter of law, with prejudice, as to TD Bank.

Respectfully submitted,

**BROWN & CONNERY, LLP**

Dated: April 13, 2026 By: *s/Susan M. Leming*

Susan M. Leming
sleming@brownconnery.com
360 Haddon Avenue
Westmont, NJ 08108

*Counsel for Defendant, TD Bank, N.A.*