**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRONTLINE FABRICS, INC.,<br>Plaintiff,<br>v.<br>GULIPEK KUMAS VE IPLIK VE, et al.,<br>Defendants. | Civil Action No.2:25-cv-07342-KSM |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)


**BROWN & CONNERY**

Susan M. Leming, Esq.
360 North Haddon Avenue
Westmont, NJ 08108
Phone: (856) 854-8900
Facsimile: (856) 858-4967
sleming@brownconnery.com

*Counsel for Defendant, TD Bank, N.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
PROCEDURAL HISTORY ........ 2
RELEVANT FACTUAL BACKGROUND ........ 2
LEGAL ARGUMENTS ........ 5
I. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ........ 5
II. Plaintiff Still Has No Article 4A Claim Against TD Bank. ........ 5
CONCLUSION ........ 11

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 5

*GN Pro. Grp., LLC v. Well Done ASAP, LLC*,
764 F. Supp. 3d 757 (N.D. Ill. 2025) ..... 8, 9

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ..... 9, 10

*Langston & Langston, PLLC v. SunTrust Bank*,
480 F. Supp. 3d 737 (S.D. Miss. 2020) ..... 8

*McDermott v. Clondalkin Grp., Inc.*,
649 F. App'x 263 (3d Cir. 2016) ..... 9

*Morrow v. Balaski*,
719 F.3d 160 (3d Cir. 2013) ..... 5

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ..... 5

*Remtek Servs. v. Wells Fargo Bank, N.A.*,
No. 19-12790, 2020 U.S. Dist. LEXIS 7678, at *8 (D.N.J. Jan. 16, 2020) ..... 7, 8, 10

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 n.27 (3d Cir. 2010) ..... 5

*Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA.*,
711 F. Supp. 3d 593 (D.S.C. 2024) ..... 9

*Studco Bldg. Sys. US, LLC*,
133 F.4th at 274 ..... 6, 8

*Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*,
No. 23-0979, 2024 U.S. Dist. LEXIS 44671, at *6 (E.D. Pa. Mar. 13, 2024) ..... 6

**Statutes**

13 Pa. C.S. § 4A207(b)(1) ..... 6, 7, 8, 10

13 Pa. Cons. Stat. Ann. § 1202(b) ..... 8

13 Pa. Cons. Stat. Ann. § 4A207 ("Section 207") ..... 5

UCC § 4A-207 cmt. 2 ..... 8, 10

**Rules**

Fed. R. Civ. P. 8(a)(2) ... 5
Federal Rule of Civil Procedure 12(b)(6) ... 5
Federal Rule of Civil Procedure 8 ... 5
Rule 12(b)(6) ... 5

## INTRODUCTION

Defendant, TD Bank, N.A. ("TD Bank") moves to dismiss Plaintiff, Frontline Fabrics, Inc.'s ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Despite the cautions issued by this Court (Dkt. No. 39, ftnt. 7), Plaintiff's attempt to salvage its sole remaining Uniform Commercial Code ("UCC") claim as to TD Bank is futile.

In the Amended Complaint, Plaintiff alleges that unknown hackers compromised a vendor's email account and induced it to direct six payments, totaling $1,426,476.86, to a TD Bank account. It is further alleged that the account was held in the name of Lisa Ann Gray ("Gray"), whom Plaintiff claims was herself deceived by the hackers. Plaintiff further asserts that TD Bank violated the UCC by accepting payment orders that named Gulipek Kumas Ve Iplik Ve ("Gulipek Tech") as beneficiary, but identified Gray's account by number.

The claim against TD Bank requires actual knowledge. Plaintiff must plead sufficient facts supporting that, before accepting a challenged payment order, the relevant TD Bank personnel were in fact aware that the beneficiary name and account number identified different persons. Plaintiff does not do so.

Instead, the First Amended Complaint repeatedly alleges TD Bank's supposed knowledge *solely based on information and belief.* At best, Plaintiff's only supporting facts concern two transactions involving a different TD Bank account. Nor does Plaintiff allege (1) when or (2) that any TD Bank employee who reviewed or accepted the sixth payment order knew or was otherwise aware of an alleged beneficiary discrepancy before acceptance.

The UCC requires actual knowledge, not constructive knowledge, institutional possession of unrelated records, or knowledge that a further investigation might have revealed. Because the

pleaded facts do not support the required inference of actual knowledge, the claim against TD Bank should be dismissed with prejudice as a matter of law.

## PROCEDURAL HISTORY

Plaintiff filed its initial Complaint on December 26, 2025 alleging one count of common law negligence and one count seeking declaratory judgment against TD Bank for violating the UCC. *See generally* Complaint, ECF No. 1. On April 13, 2026, TD Bank moved to dismiss both claims. *See generally* TD Bank's Motion to Dismiss, ECF No. 18. Following extensive oral argument, on August 11, 2026, the Court granted TD Bank's motion to dismiss. *See* ECF No. 40. The Court dismissed Plaintiff's negligence claim against TD Bank with prejudice and dismissed Plaintiff's declaratory judgment claim without prejudice, offering Plaintiff an opportunity to amend its UCC claim by August 21, 2026. *Id.* Plaintiff filed its Amended Complaint alleging one claim against TD Bank seeking declaratory judgment for an alleged violation of the UCC. *See* ECF No. 41. On September 25, 2026, TD Bank and Plaintiff stipulated to an extension of time to allow TD Bank to respond to Plaintiff's Amended Complaint by October 23, 2026. The within motion to dismiss Plaintiff's Amended Complaint follows.

## RELEVANT FACTUAL BACKGROUND[1]

On February 21, 2025, Gulipek Tech contacted Plaintiff claiming that Plaintiff failed to pay nearly $300,000 in invoices. *See* Amended Complaint, ECF No. 41, at ¶ 11. Plaintiff began to investigate Gulipek Tech's claim.[2] *Id.* at ¶ 12.

[1] The allegations of the Amended Complaint are assumed to be true for purposes of this Motion to Dismiss only. TD Bank reserves the right to dispute the allegations of the Amended Complaint in this matter and in all future proceedings.

[2] Plaintiff's controller, Tiffany Lawler, recently resigned, but Plaintiff was able to conduct its investigation because it still had access to Lawler's emails and accounting records.

By February 25, 2025, Plaintiff allegedly concluded that Lawler issued multiple payments in Gulipek Tech's name, but routed those payments to a different bank account—a recently opened TD Bank account—than Gulipek Tech previously used. *Id.* at ¶ 13. Plaintiff is a noncustomer of TD Bank. *Id.* at ¶ 34 (noting that Plaintiff's bank is Co-Defendant, Truist Bank). The subject payments were prompted by emails between Lawler and Plaintiff's local contact at Gulipek Tech, Lonnie Braxton, using Braxton's Gulipek Tech email address. *Id.* at ¶ 14. Prior to the payments being made, Braxton instructed Lawler to update Gulipek Tech's bank account information—from a Turkish bank account to the recently opened TD Bank account. *Id.* at ¶ 15.

Plaintiff alleges it contacted Gulipek Tech, who confirmed that it had planned to open a United States bank account, and that it had not received any of the payments Plaintiff initiated. *Id.* at ¶ 16. Following Plaintiff's questioning Gulipek Tech about whether Gulipek Tech had experienced any email or computer system compromises, Gulipek Tech allegedly advised Plaintiff it had not detected any issues. *Id.* at ¶ 17.

On February 26, 2025, during a meeting between Braxton and Plaintiff's management team, Braxton stated that his email address had been accessed by a third party, that the emails sent to Lawler were sent from Braxton's official Gulipek Tech email account, and that Braxton hadn't received any of Lawler's responses asking questions about invoices or payment confirmations. *Id.* at ¶ 18. The same morning that Plaintiff spoke to Braxton, Gulipek Tech had informed Braxton that he needed to update all of his passwords and that he was required to enable multi-factor authentication. *Id.* at ¶ 19.

On information and belief, Plaintiff concluded that Gulipek Tech's computer systems were infiltrated by third-party hackers who posed as Braxton and facilitated the sending of the funds to a fraudulent bank account rather than an allegedly legitimate account that Gulipek Tech was

planning to open. *Id.* at ¶ 20. Also on information and belief, according to Plaintiff, the third-party hackers tricked a woman named Lisa Gray into opening various bank accounts—including two at TD Bank (one ending -6656 (the "6656 Account") and another ending -5204 (the "5204 Account")). *Id.* at ¶ 21. Plaintiff alleges that between January 13, 2025 and February 12, 2025, six Automated Clearing House ("ACH") transactions were sent to the 6656 Account, operated by Gray at the direction of the third-party hackers to and for the benefit of "Gulipek Kumas Ve Iplik" totaling $1,426,476.86. *Id.* at ¶¶ 25-26.

Plaintiff alleges, **solely on information and belief**, TD Bank knew the recipient and beneficiary of Plaintiff's six ACH transfers to the 6656 Account was not Gulipek Tech because "the records obtained by Frontline to date from TD Bank and other banks show discovery of mismatches by TD Bank and other banks ***on other accounts***." *Id.* at ¶ 27 (emphasis added). Again, **based solely on information and belief**, Plaintiff alleges that on February 10, 2025, TD Bank returned the proceeds from two other wires sent from the ***other account***—the 5204 Account—with notes "UNABLE TO APPLY BENEFICIARY DETAILS MISMATCH" and "OFFBOARDED – SCAM EXPOSURE." *Id.* at ¶ 28.

Plaintiff eventually reported the alleged theft of its funds to local law enforcement and the Federal Bureau of Investigation ("FBI") in late February 2025. *Id.* at ¶ 30. Plaintiff's outside counsel contacted TD Bank in late-March 2025 seeking TD Bank's assistance in "clawing back" the funds, but the funds were allegedly unavailable. *Id.* at ¶¶ 31-32; 35. Plaintiff asserts the third-party hackers transferred the funds out of the 6656 Account to the third-party hackers located in Haiti, and that the subject funds were thereafter converted into cryptocurrency. *Id.* at ¶¶ 36-37. To date, other than $100,000 which has allegedly been located but not yet recovered by the FBI, Plaintiff has not recovered its transferred funds. *Id.* at ¶¶ 38-39.

# <u>LEGAL ARGUMENTS</u>

## I. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

In accordance with Federal Rule of Civil Procedure 8, pleadings in federal courts must contain, among others, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss made pursuant to Rule 12(b)(6) allows the Court to dispose of a claim for relief, before the parties are required to devote time and resources to it, where it is clear on the face of the pleading that the plaintiff's asserted claims cannot succeed.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted)). In deciding a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Although factual allegations should be accepted as true, the court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). However, the pleading must allege more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *See Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678.

## II. Plaintiff Still Has No Article 4A Claim Against TD Bank.

Plaintiff's remaining claim as to TD Bank seeks a judicial declaration that TD Bank violated the UCC, specifically 13 Pa. Cons. Stat. Ann. § 4A207 ("Section 207"). While Plaintiff's

Amended Complaint identifies specific provisions of Article 4A that TD Bank allegedly violated as required by this Court (Dkt. No. 39, ftnt. 7), the claim still lacks legal viability warranting dismissal.

First, the claim against TD Bank rests on the allegation that it accepted payment orders despite actual knowledge that the beneficiary name and account number identified different persons. However, Plaintiff conveniently overlooks the statutory authority under Article 4A that the beneficiary's bank may rely on the account number and has no duty to determine whether the beneficiary name and account number refer to the same person when it does not know of the discrepancy. *See Studco Bldg. Sys. US, LLC*, 133 F.4th at 274 ("Thus, if the beneficiary's bank deposits the funds into the account associated with the number designated in the payment order and it has no knowledge of any misdescription at the time of the deposit, it has no further liability.").

"Section 207(b) of Article 4A sets forth specific obligations and liabilities of a beneficiary's bank that receives a payment order (e.g., a wire transfer order) in which the stated 'name and [account] number refer to different persons.'" *Zhejiang Matrix SCM Co. v. PNC Bank, Nat'l Ass'n*, No. 23-0979, 2024 U.S. Dist. LEXIS 44671, at *6 (E.D. Pa. Mar. 13, 2024) (alteration in original) (quoting 13 Pa. C.S. § 4A207(b)(1)). Pursuant to 13 Pa. Cons. Stat. § 4A207(b):

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

"The main effect of Section 4A-207(b) is to authorize banks to process payment orders by relying only on the provided account number." *Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 U.S. Dist. LEXIS 7678, at *8 (D.N.J. Jan. 16, 2020).[3] Liability cannot be based merely on a failure to confirm that the named beneficiary matches the holder of the identified account; the pertinent distinction is whether the bank had actual knowledge of the discrepancy. *Id.*

As the comments to Section 207 make clear, electronic transfers are typically processed via automated means without human intervention:

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. The process is comparable to that used in automated payment of checks. The standard format, however, may also allow the inclusion of the name of the beneficiary and other information which can be useful to the beneficiary's bank and the beneficiary but which plays no part in the process of payment. If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced….

---

[3] New Jersey's version of Section 207 uses numbered paragraphs where the Pennsylvania version uses lettered ones, but the text is otherwise identical.

UCC § 4A-207 cmt. 2. A beneficiary bank, such as TD Bank, has no duty to determine whether there is a conflict [between an account name and account number]. *Id.*; *see also Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 U.S. Dist. LEXIS 7678, at *9 (D.N.J. Jan. 16, 2020); *Studco Bldg. Sys. US, LLC*, 133 F.4th at 275 ("The beneficiary's bank therefore has no duty to adopt reasonable routines to check for conflicting names.").

Further, liability under Section 207(b) requires that a beneficiary bank have "actual knowledge" of a discrepancy between the beneficiary and the account number to where the funds are deposited. *See* 13 Pa. Cons. Stat. § 4A207(b)(1); *see also* 13 Pa. Cons. Stat. Ann. § 1202(b) ("'Knowledge' means actual knowledge."). The fact that an alleged discrepancy existed is insufficient to establish a bank's actual knowledge of same. *See GN Pro. Grp., LLC v. Well Done ASAP, LLC*, 764 F. Supp. 3d 757, 761-62 (N.D. Ill. 2025) ("[A]ctual knowledge is not established simply from the fact of the mismatch."); *see also Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020) ("Data stored in a computer system does not constitute actual knowledge, even if inspection of the data would have revealed a misdescription.").

Plaintiff's claim hinges on whether TD Bank had actual knowledge of a discrepancy as to the beneficiary name and account number. Plaintiff's Amended Complaint wholly fails to comply with the Court's directive. Plaintiff still fails to allege any plausible facts supporting the allegation that TD Bank possessed actual knowledge that the beneficiary named in each of the six transfers at issue (here, Gulipek Tech) did not match the account number listed on those same transfers (here, account ending 6656). As this Court has already recognized, Plaintiff was given an opportunity to amend its Complaint to "identify the provisions of Article 4A that TD Bank is alleged to have violated and describe the *facts* that support those violations." *See* Memorandum,

ECF No. 39, at 22, ftnt. 7 (emphasis in original). Plaintiff continues to fail in establishing a cognizable cause of action under Article 4A.

As alleged, **solely based on information and belief**, Plaintiff claims "one or more TD Bank employees responsible for reviewing or accepting the payment order had actual knowledge that the named beneficiary, Gulipek Tech, and the holder of the numbered account were different persons." *See* Plaintiff's Amended Complaint, ECF No. 41, at ¶ 53. This conclusory allegation falls short of legally supporting a viable claim against TD Bank. Similar allegations have been routinely rejected by other courts. *See GN Pro. Grp., LLC v. Well Done ASAP, LLC*, 764 F. Supp. 3d 757, 762 (N.D. Ill. 2025) (dismissing Plaintiffs' misdescription of beneficiary claim because Plaintiff failed to allege any non-conclusory facts tending to show beneficiary bank actually knew Plaintiffs' transfer was sent to an account the number for which did not match the beneficiary); *see also Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA.*, 711 F. Supp. 3d 593, 598 (D.S.C. 2024) (Plaintiff failed to sufficiently allege beneficiary bank had actual knowledge of alleged discrepancy between account number and beneficiary). While allegations based on information and belief are permitted in this Circuit, a plaintiff must plead allegations with specific factual allegations sufficient to establish the plausibility of the claim. *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) ("This Court has explained that pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002))).

The Amended Complaint's lone "facts" supporting its Section 207 claim are that TD Bank allegedly possessed "account-specific records concerning Gray that contained beneficiary mismatch and scam exposure notations on other transactions." *Id.* at ¶ 54. Critically, these allegations relate to TD Bank's knowledge of an alleged difference between the beneficiary of certain transfers and the 5204 Account, ***not*** the 6656 Account. *Id.* at ¶ 28. Absent factual allegations that TD Bank knew the 6656 Account was not a Gulipek Tech account, i.e., that TD Bank knew of the difference between Gulipek Tech as the beneficiary of the six transfers at issue and the 6656 Account, Plaintiff's Amended Complaint fails as a matter of law.

In other words, the best Plaintiff can do—and has done—is take TD Bank's alleged knowledge with respect to certain transactions on the 5204 Account, and extrapolate it to the alleged 6656 Account. But as Section 207, its comments, and the case law makes clear, a beneficiary bank has no obligation to investigate whether a conflict between the beneficiary and the account number exists. *See* 13 Pa. Cons. Stat. Ann. § 4A207(b)(1); *see also* UCC § 4A-207 cmt. 2 ("If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost."); *Remtek Servs.* 2020 U.S. Dist. LEXIS 7678, at *9.

Finally, even if the Section 207 claim could survive—it cannot—Plaintiff's Amended Complaint alleges TD Bank gained actual knowledge of the alleged discrepancy between the beneficiary and the account number on February 10, 2025. *See* Plaintiff's Amended Complaint, ECF No. 41, at ¶ 28. Plaintiff is remiss in noting that only one of the six ACH transfers at issue in this action occurred *after* February 10, 2025. *Id.* at ¶ 25. Even based upon the allegations

presented by Plaintiff, the timing of the purported actual knowledge by TD Bank does not support a violation of the UCC by TD Bank.

## **CONCLUSION**

For all the foregoing reasons, TD Bank respectfully submits that Plaintiff's Amended Complaint should be dismissed in its entirety as a matter of law, with prejudice, as to TD Bank.

Respectfully submitted,

**BROWN & CONNERY, LLP**

Dated: October 23, 2026

By: *s/Susan M. Leming*

Susan M. Leming
sleming@brownconnery.com
360 Haddon Avenue
Westmont, NJ 08108

*Counsel for Defendant, TD Bank, N.A.*